No. 96-221

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF

RUSSELL M. SEUBERT,

      Petitioner and Respondent,

  and

CAMILLE E. SEUBERT,

      Respondent and Appellant.

FILED

NOV 14 1996

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Ninth Judicial District,
               In and for the County of Toole,
               The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          E. Lee LeVeque; Conklin, Nybo, LeVeque &
          Murphy, Great Falls, Montana

      For Respondent:

          Barbara E. Bell; Bell & Marra, Great Falls,
          Montana

Submitted on Briefs:  October 10, 1996

Decided:  November 14, 1996

Filed:

_____
          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter, and West Publishing Company.

Appellant, Camille Seubert (Camille), appeals from the Ninth Judicial District Court, Toole County, determination that her October 17, 1995, settlement agreement with Russell Seubert (Russ) was not unconscionable. We affirm.

We restate the issue raised by Camille as follows:

Did the District Court abuse its discretion by determining that the settlement agreement between Camille and Russ was not unconscionable?

## BACKGROUND

Russ and Camille's marriage was dissolved by court order in November of 1994. Prior to the hearing before the District Court, Russ hired an accountant, Steven Nichols (Nichols), to value his interest in Seubert Insurance. Camille did not have an independent valuation of Russ' interest in Seubert Insurance completed at that time. Nichols valued Russ' twenty seven and one half percent interest in Seubert Insurance at $53,544. In valuing Russ' interest in Seubert Insurance, Nichols used three methods approved by IRS Revenue Ruling 59-60. These methods included determining assets and liabilities at fair market value, discerning the earning capacity of the company, and the market value of stocks of similar corporations. Nichols averaged the results of these three

2

approaches and valued Russ' interest at $53,544. Using this assessment in determining the value of Seubert Insurance, Russ and Camille executed a written custody, support and property settlement agreement. The next day, Camille notified her attorney that she wanted to rescind the agreement.

Camille made a motion to re-open discovery concerning the value of the Russ' twenty seven and one half percent interest in Seubert Insurance. The District Court granted her motion and opened discovery which allowed Camille to obtain her own appraisal of Seubert Insurance. Camille hired Nicholas Bourdeau (Bourdeau) to conduct a valuation of Russ' interest in Seubert Insurance. Bourdeau arrived at his valuation by capitalizing excess earnings, also known as goodwill, and then using the cash flow method of accounting. Using this method, Bourdeau valued Russ' interest at $128,237, a difference of over $74,000 from Nichols' assessment. In addition, Camille argued that Nichols' valuation made the agreement unconscionable because his figure was nearly $50,000 lower than the $102,000 Russ was guaranteed under a Restrictive Stock Agreement. The District Court, however, ultimately determined that the property settlement agreement was not unconscionable, finding that nothing in the circumstances surrounding the execution of the property settlement supported Camille's contention. Focusing on the disparity between the two valuations of Russ' interest in Seubert Insurance, Camille has filed this appeal challenging the District Court's determination that the settlement agreement was not unconscionable.

3

## DISCUSSION

Did the District Court abuse its discretion by determining that the settlement agreement between Camille and Russ was not unconscionable?

The standard of review of a district court's finding of conscionability in the distribution of assets and liabilities is abuse of discretion. In re Marriage of Caras (1994), 263 Mont. 377, 380-81, 868 P.2d 615, 619 (citing In re Marriage of Hamilton (1992), 254 Mont. 31, 36, 835 P.2d 702, 704-05). When a district court engages in conscionability determinations, the result is neither a pure finding of fact nor a pure legal conclusion. Rather, the determination is a discretionary action and is presumed to be correct, and will not be overturned by this Court absent an abuse of discretion. In re Marriage of Bernard (1994), 264 Mont. 103, 107, 870 P.2d 91, 93. In the instant case, Camille argues that the settlement agreement she entered into was unconscionable because the value of Russ' ownership interest in Seubert Insurance did not reflect the fact that the Restrictive Stock Agreement guaranteed the value of Russ' interest would be $102,000.

Section 40-4-201(2), MCA, provides:

> In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except those providing for the support, custody, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.

In making its determination of the conscionability of this settlement agreement, the District Court may consider the economic circumstances of the parties resulting from the agreement, and any

4

other relevant evidence including the conditions under which the agreement was made. See Commissioners' note to § 40-4-201(2), MCA. In Green v. Green (1978), 176 Mont. 532, 579 P.2d 1235, this Court declined to define the word "unconscionable" for purposes of modifying a child support agreement and explained "we will follow the policy of determining on a case to case basis, from the underlying facts, whether the evidence is sufficient to be unconscionable." Green, 579 P.2d at 1238-39.

Although this Court has not specifically defined what constitutes unconscionability, an example of unconscionability can be seen in Best v. Best (1982), 202 Mont. 109, 118, 656 P.2d 201, 206. In Best, one spouse did not receive independent counsel and did not have complete knowledge of concealed assets estimated to be in excess of $1,000,000. Best, 656 P.2d at 206. The fact that one spouse was not made aware of the existence of such significant assets made the settlement agreement patently unfair. In contrast, Camille was made aware of Russ' interest in Seubert Insurance throughout settlement negotiations. Camille was represented by counsel at the time she entered this agreement and the only complaint she has regarding the settlement agreement relates to the estimated value of Seubert Insurance.

The disparity between the valuation of Russ' interest in Seubert Insurance, provided by Russ' C.P.A. and Camille's C.P.A. is not by itself sufficient evidence that the settlement agreement was unconscionable. As § 40-4-201(2), MCA, explains, a separation agreement is binding upon the court unless it finds, after

5

considering the economic circumstances of the parties and any other relevant evidence, that the separation agreement is unconscionable. Using Nichols' valuation of Seubert Insurance, the property settlement agreement awarded Russ his interest in Seubert Insurance, his interest in a Farmer's Insurance contract, a 50% interest in his office building, his IRA, his Toyota Camry, and various personal property worth a total value of $125,807. In return, Camille received $53,000 dollars in equity in her home, her car, various household goods and her pension. After subtracting the amount of debt owed by each party, Russ' assets totaled $93,544, while Camille's assets totaled $95,100, a difference of $1,546. In addition to this division of property, Russ also agreed to make Camille's car payments of $828 per month, to pay $225 per month for day care, and $350 per month for maintenance over the next five years.

After considering the agreement as a whole, the record indicates that Camille's decision to enter the settlement agreement was reasonable. There is nothing in the record to indicate that the settlement agreement between Camille and Russ was anything less than fair. Even if the valuations by Russ' C.P.A. were erroneous, the agreement entered into by Camille and Russ was far from unconscionable.

Accordingly, we affirm the finding of the District Court.

_W. William Dryphunt_
Justice

6

We concur:

_____
Chief Justice

_____

_____

_____
Justices

November 14, 1996

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

E. Lee LeVeque
Conklin, Nybo, LeVeque & Murphy
P.O. Box 2049
Great Falls, MT 59403-2049

Barbara E. Bell, Esq.
Bell & Marra
303 Liberty Center
#9 Third St. No.
Great Falls, MT 59401

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy