No. 95-192

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF
DENISE DeWITT,

      Petitioner and Appellant,

and

JOHN J. DeWITT,

      Respondent and Respondent.

FILED

OCT 31 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Bernard J. "Ben" Everett; Knight, Dahood, McLean &
          Everett, Anaconda, Montana

      For Respondent:

          Brad L. Belke, Attorney at Law, Butte, Montana

Submitted on Briefs:  October 12, 1995

Decided:  October 31, 1995

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Denise DeWitt appeals from the December 29, 1994, Findings of Fact and Conclusions of Law of the Second Judicial District Court, Silver Bow County, dissolving the marriage, distributing the marital estate and awarding child support, custody and visitation. We affirm in part and reverse in part.

The following issues are raised on appeal:

1. Did the District Court err in awarding child custody and visitation?
2. Did the District Court err in concluding that Respondent did not have to pay child support?
3. Did the District Court err in distributing the marital estate?

John J. DeWitt (John) and Denise DeWitt (Denise) were married on October 10, 1987. Two daughters, now ages 4 and 6, were born of the marriage. At the time their marriage was dissolved, Denise was employed as a real estate loan officer and John was employed seasonally as a golf pro. The District Court found that both parties were in excellent health and that both have a good opportunity to acquire income and assets in the future. The court noted that Denise has no college degree, and that John has a college degree in marketing.

Both parties requested that the children be placed in their joint custody, and both petitioned to be the primary physical custodian. The District Court, finding that joint custody was in the best interests of the children, awarded joint custody to the parties and designated Denise as the primary physical custodian. The court noted that John's employment was seasonal and, to

2

accommodate his schedule, awarded him a thirty-day "summer visitation" period during the winter months of January, February, or March. In its custody determination, the court also recognized the parties' religious background and that John's extended family lives outside the state of Montana.

The District Court adopted the parties' stipulation as to the values of the marital assets and the amounts of the marital debts. The court distributed marital assets to Denise in the amount of $145,522.98, and to John in the amount of $35,099.14. The court apportioned all of the parties' debts, in the amount of $80,177.24, to Denise. The court ordered that the family home be maintained for the benefit of the children, but that Denise was required to pay John $20,000 as his share of the equity in the house when the youngest child reaches age 18. Further, the court ordered that Denise pay $1,200 per year as interest on this obligation.

The court stated that the parties agreed that John would not be required to pay child support until such time as he obtains regular monthly employment. At that time, the court stated that child support obligations should be calculated according to the Uniform Child Support Guidelines.

Denise appeals from the District Court's rulings on child custody and visitation, child support, and the distribution of the marital estate.

1. Did the District Court err in awarding child custody and visitation?

In reviewing a district court's award of child custody, we determine whether the district court's findings are clearly

erroneous. In re Marriage of Dreesbach (1994), 265 Mont. 216, 220-21, 875 P.2d 1018, 1021. The findings of fact must be based on substantial credible evidence and the court's decision will be upheld unless a clear abuse of discretion is shown. Marriage of Dreesbach, 875 P.2d at 1021; In re Marriage of Hunt (1994), 264 Mont. 159, 164, 870 P.2d 720, 723.

In determining child custody, the district court must consider the "best interest" criteria set forth in § 40-4-212, MCA, however, the court is not required to make specific findings on each individual factor. Marriage of Dreesbach, 875 P.2d at 1021; In re Marriage of Merriman (1991), 247 Mont. 491, 493, 807 P.2d 1351, 1353. Here, the Findings of Fact and Conclusions of Law illustrate that the District Court considered the best interest factors. In addition, the court considered the religions traditions of the parties, John's out-of-state relatives, and John's summer employment. Substantial credible evidence supports the District Court's determination of child custody. The District Court's findings are not clearly erroneous.

2. Did the District Court err in concluding that Respondent did not have to pay child support?

In reviewing a district court's award of child support, we consider whether the district court abused its discretion. In re Marriage of Craib (1994), 266 Mont. 483, 490, 880 P.2d 1379, 1384. In its Findings of Fact and Conclusions of Law, the District Court stated:

> Because of John DeWitt's present employment status the parties agree that he not be required to pay to Denise DeWitt any monthly child support until such time as he

4

> obtains regular employment. At that time, he should notify Denise DeWitt of his employment status and his child support will be calculated in accordance with the child support guidelines of the State of Montana. If John DeWitt does not find regular employment within twelve (12) months from the date of this Decree, he shall present to the Court in writing, proof of his efforts to find employment and the reasons he has not become employed.

Although the District Court stated that "child support will be calculated in accordance with the child support guidelines," the court did not require either party to complete the Uniform Child Support Guidelines Affidavit. Section 40-4-204(3)(a), MCA, requires that the guidelines must be used in all cases. See also In re Marriage of Brandon (Mont. 1995), 894 P.2d 951, 953, 52 St.Rep. 381, 382-83.

If the court deviates from the guidelines, the court must justify its failure to follow the guidelines with "clear and convincing" evidence. Section 40-4-204(3)(a), MCA; Marriage of Brandon, 894 P.2d at 953. Further, the guidelines require that findings which vary the amount of guideline support must include a statement of the amount of support that would have been ordered under the guidelines without a variance. 46.30.1507(4), ARM.

John argues that he and Denise agreed that he would not be required to pay child support. The District Court's finding relies upon such a stipulation. Denise argues that no such stipulation or agreement was made by the parties. In either event, the District Court was still required to calculate support according to the Uniform Child Support Guidelines. The guidelines themselves provide that:

5

A court or administrative hearing officer may vary from the guidelines based on a stipulation or agreement of the parties only if the stipulation or agreement meets the following criteria:
(a) it is in writing executed by the parties;
(b) the parties have signed the stipulation or agreement free of coercion;
(c) it contains specific justification as to why application of the guidelines is unjust or inappropriate; and
(d) it contains a statement of the amount of support that would have been appropriate under the guidelines without the variance.

46.30.1507(5), ARM; Marriage of Brandon, 894 P.2d at 954. Even if John and Denise had stipulated that he would not be required to pay child support until he was regularly employed, the above criteria must still be satisfied before the court can vary the support obligation. Here, none of the criteria are satisfied; there is no written agreement, there is no specific finding that application of the guidelines would be unjust or inappropriate, nor is there a statement of what the support obligation would have been without the variance.

In this case, the District Court did not even have the parties complete the financial affidavits. Since there had not been any determination of support due under the guidelines, it would have been impossible for the District Court to support its variance from the guidelines with clear and convincing evidence. Without first knowing what the guidelines require, it is impossible for the district court (in the first instance) or this Court (on appeal) to know whether a waiver or variance is "unjust" or "inappropriate" in a particular case.

From the record, John's annual net income and employment

6

situation is not altogether clear. However, we note that except in cases where the parents have extremely low net income, a specific minimum contribution toward child support should be ordered in all cases, even though a parent does not have sufficient net income to meet his or her own self-support reserve needs. Marriage of Brandon, 894 P.2d at 954 (citing 46.30.1538, ARM).

The District Court found that John's employment opportunities and vocational skills were excellent and that he has a good opportunity to acquire income and assets in the future. The court also noted that John has a college degree in marketing. Yet, the District Court found that aside from the seasonal work as a golf pro "[r]espondent has no other sources of income." This Court has recognized that:

> In cases where the obligor parent is not working or is not working at full earning capacity, the reasons for such a limitation on earnings should be examined. If the reason is a matter of choice, the local job market should be reviewed to determine what a person with the obligor parent's trade skills and capabilities could earn. Those typical earnings can then be imputed to the obligor parent. . . .

In re Marriage of Wersland (1991), 249 Mont. 169, 171-72, 814 P.2d 991, 992. In determining John's income under the guidelines, the District Court should consider imputing income to John if he remains only seasonally employed.

The legislature has stated that the guidelines "must be used in all cases." "Must" is mandatory and "all" means every. Neither concept leaves room for exception. We conclude that the District Court erred when it did not apply the Uniform Child Support Guidelines and, therefore, we must remand this case for a

7

determination of child support due based upon the guidelines. Marriage of Brandon, 894 P.2d at 954. On remand, if the court chooses to deviate from the guidelines, it must do so with specificity and by presenting clear and convincing evidence for any deviation.

3. Did the District Court err in distributing the marital estate?

The standard of review of a district court's division of marital property is whether the district court's findings of fact are clearly erroneous. In re Marriage of Smith (Mont. 1995), 891 P.2d 522, 525, 52 St.Rep. 174, 175-76; In re Marriage of McLean (1993), 257 Mont. 55, 61, 849 P.2d 1012, 1015. Where substantial credible evidence supports the court's findings and judgment, this Court will not alter the trial court's decision unless there is an abuse of discretion. In re Marriage of Maedje (1994), 263 Mont. 262, 266, 868 P.2d 580, 583.

Denise and John stipulated as to the marital assets, their value, and the amounts of the marital debts. The District Court adopted that stipulation in its Findings of Fact and Conclusions of Law. Further, the District Court's findings demonstrate that the court addressed the parties' income, their use of the family home, and other criteria such as the duration of the marriage and the employability of the parties, as set forth in § 40-4-202, MCA.

This Court will not disturb an equitable apportionment of the marital assets when it is clear that the district court was acting within its discretion. In re Marriage of Danelson (1992), 253 Mont. 310, 319, 833 P.2d 215, 221. Here, it is clear from the

8

record that the District Court was acting within its discretion and the distribution of the marital estate was not clearly erroneous.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices